Approved: _____  **ORIGINAL**
JESSICA FENDER / MAX NICHOLAS
Assistant United States Attorneys

Before:  THE HONORABLE SARAH J. NETBURN
United States Magistrate Judge
Southern District of New York

- - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA

        - v. -

TASHEEM COLEY,
    a/k/a "Bah,"
ELZEY LUCHONE,
    a/k/a "Money,"
JASON RIVERA,
    a/k/a "Harding,"
    a/k/a "J,"
ALUKO ROBERTS,
    a/k/a "Luke,"
MARVIN RUTHERFORD,
    a/k/a "Trap,"
JAQWAN SUTTON,
    a/k/a "Q," and
JAVON WYNN,
    a/k/a "Sunny,"
    a/k/a "Dub,"

        Defendants.

- - - - - - - - - - - - - - - x

16 MAG 7233

**SEALED COMPLAINT**

Violation of
21 U.S.C. § 846

COUNTY OF OFFENSE:
BRONX



SOUTHERN DISTRICT OF NEW YORK, ss.:

MOISES MARTINEZ, being duly sworn, deposes and says that he is a Detective with the New York City Police Department ("NYPD"), and charges as follows:

## COUNT ONE

1. From in or about July 2015 through on or about September 2016, in the Southern District of New York and elsewhere, TASHEEM COLEY, a/k/a "Bah," ELZEY LUCHONE, a/k/a "Money," JASON RIVERA, a/k/a "Harding," a/k/a "J," ALUKO

ROBERTS, a/k/a "Luke," MARVIN RUTHERFORD, a/k/a "Trap," JAQWAN SUTTON, a/k/a "Q," and JAVON WYNN, a/k/a "Sunny," a/k/a "Dub," the defendants, and others known and unknown, intentionally and knowingly did combine, conspire, confederate, and agree together and with each other to violate the narcotics laws of the United States.

2.  It was a part and an object of the conspiracy that TASHEEM COLEY, a/k/a "Bah," ELZEY LUCHONE, a/k/a "Money," JASON RIVERA, a/k/a "Harding," a/k/a "J," ALUKO ROBERTS, a/k/a "Luke," MARVIN RUTHERFORD, a/k/a "Trap," JAQWAN SUTTON, a/k/a "Q," and JAVON WYNN, a/k/a "Sunny," a/k/a "Dub," the defendants, and others known and unknown, would and did distribute and possess with the intent to distribute controlled substances, in violation of Title 21, United States Code, Section 841(a)(1).

3.  The controlled substance that TASHEEM COLEY, a/k/a "Bah," ELZEY LUCHONE, a/k/a "Money," JASON RIVERA, a/k/a "Harding," a/k/a "J," ALUKO ROBERTS, a/k/a "Luke," MARVIN RUTHERFORD, a/k/a "Trap," JAQWAN SUTTON, a/k/a "Q," and JAVON WYNN, a/k/a "Sunny," a/k/a "Dub," the defendants, conspired to distribute and possess with the intent to distribute was 280 grams and more of mixtures and substances containing a detectable amount of cocaine base, in violation of Title 21, United States Code, Section 841(b)(1)(A).

(Title 21, United States Code, Section 846.)

The bases for my knowledge and for the foregoing charge are, in part, as follows:

4.  I am a Detective with the NYPD, and I have been personally involved in the investigation of this matter. This affidavit is based upon my personal participation in the investigation, my conversations with law enforcement agents, witnesses, and others, as well as my examination of report and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements, and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where figures, calculations, and dates are set forth herein, they are approximate, unless stated otherwise.

5.      Based on my participation in the investigation, my personal observations, conversations with other law enforcement officers, including various undercover officers ("UCs"), conversations with a confidential informant ("CI-1"),[1] and my review of video and audio recordings and NYPD paperwork, I have learned the following, among other things:

       a.      From at least in or about July 2015 through in or about September 2016, the NYPD has been investigating TASHEEM COLEY, a/k/a "Bah," ELZEY LUCHONE, a/k/a "Money," JASON RIVERA, a/k/a "Harding," a/k/a "J," ALUKO ROBERTS, a/k/a "Luke," MARVIN RUTHERFORD, a/k/a "Trap," JAQWAN SUTTON, a/k/a "Q," and JAVON WYNN, a/k/a "Sunny," a/k/a "Dub," the defendants, for narcotics distribution in the vicinity of Stratford Avenue in the Bronx, New York, and elsewhere.

       b.      As part of the investigation, the NYPD made a series of undercover purchases of cocaine base (commonly known as "crack cocaine"), some of which purchases were audio or video recorded, from COLEY, LUCHONE, RIVERA, ROBERTS, RUTHERFORD, SUTTON, and WYNN.  A subset of these purchases are summarized as follows:

            i.      On or about July 20, 2015, CI-1, who was equipped with a recording device, called SUTTON and asked for "a hundred dollar play."  SUTTON responded "ok" and told CI-1 that SUTTON would meet CI-1 "in front."  Thereafter, CI-1 walked to the vicinity of Manor Avenue and 172nd Street in the Bronx, New York, and went to the front door of an apartment.  LUCHONE was at the door; after CI-1 and LUCHONE greeted each other, they walked back to the kitchen area. CI-1 then observed SUTTON and RUTHERFORD in the kitchen.  SUTTON was holding a twist, and was arguing with RUTHERFORD over the money obtained from the sale of crack cocaine.  CI-1 observed approximately 5 or 6 grams of crack cocaine in the kitchen area.  CI-1 and LUCHONE continued into a bedroom area, at which point LUCHONE handed CI-1 numerous bags of alleged crack cocaine in exchange for approximately $100.  Shortly thereafter, CI-1 exited the apartment and handed law enforcement officers 10 clear ziplock bags containing a rocky substance which later tested positive for the presence of cocaine base, and weighed approximately .66 grams.

---

[1]      CI-1 received financial compensation from law enforcement for providing information in connection with this and other criminal investigations.  CI-1's information has proven reliable in the past, and has been corroborated by, among other things, video and audio recordings.

3

ii. On or about August 14, 2015, an undercover officer ("UC-1") received a call from RUTHERFORD in which RUTHERFORD asked UC-1 whether UC-1 was coming by and what UC-1 needed. UC-1, having made controlled purchases of crack cocaine from RUTHERFORD in the past, stated that UC-1 wanted "the same thing." Shortly thereafter, in the vicinity of Manor Avenue and 172nd Street in the Bronx, New York, UC-1 met RUTHERFORD and WYNN. WYNN asked for the money, and UC-1 handed WYNN approximately $200. RUTHERFORD then handed UC-2 a twist containing 25 ziplock bags containing a rocky substance; the substance later tested positive for the presence of cocaine base, and weighed approximately 2 grams.

iii. On or about February 12, 2016, an undercover officer ("UC-2") was walking in the vicinity of Morrison Avenue and 172nd Street in the Bronx, New York. UC-2 observed ROBERTS and RIVERA inside a store and approached them. UC-2 asked ROBERTS if he had anything, to which ROBERTS responded, "how much do you need?" UC-2 said UC-2 had "ninety to spend." ROBERTS told UC-2 "I got you, let's go" and the two entered a building nearby, where UC-2 observed ROBERTS tell RIVERA to go get the "product." RIVERA left, and a short time later, RIVERA approached UC-2 and handed UC-2 a large twist and four smaller twists of a rocky substance. UC-2 handed RIVERA approximately $90; the substance inside the twists later tested positive for the presence of cocaine base, and weighed approximately 0.94 grams.

iv. On or about February 16, 2016, UC-2 was walking in the vicinity of Stratford Avenue and 172nd Street in the Bronx, New York. UC-2 saw COLEY and LUCHONE exit a cab; COLEY and LUCHONE approached UC-2 and asked UC-2 if UC-2 "was looking." UC-2 responded in the affirmative, and then followed COLEY and LUCHONE into an apartment nearby. COLEY asked UC-2 how much UC-2 needed, to which UC-2 asked to be "hooked up" because "I got a hundred to spend." COLEY responded, "I got you," and UC-2 handed COLEY approximately $100. COLEY walked into a back room of the apartment and returned a short time later with a clear bag containing five twists and six ziplock bags of a rocky substance; the substance later tested positive for the presence of cocaine base, and weighed approximately 0.6 grams.

v. On or about February 24, 2016, UC-2 was walking in the vicinity of Stratford Avenue and 172nd Street in the Bronx, New York. UC-2 saw COLEY exit a store, and COLEY asked UC-2 if UC-2 "was looking." UC-2 responded in the

4

affirmative, and COLEY pulled out a bag containing five clear ziplock bags containing a rocky substance. COLEY then stated that he needed to get the rest from "his man," and placed a phone call. UC-2 and COLEY went to an apartment located nearby, and UC-2 observed COLEY speak with RIVERA; an unknown male ("UM-1") was close by. UC-2 asked RIVERA for his phone number, and RIVERA instructed UC-2 to get it from UM-1. UC-2 obtained the phone number, and then COLEY walked from RIVERA to UC-2 and handed UC-2 a large twist containing a rocky substance. COLEY stated that "this is a fifty." The substance contained in the ziplock bags and the twist later tested positive for the presence of cocaine base, and weighed approximately 0.8 grams.

        vi.    On or about April 7, 2016, UC-2 called SUTTON and requested "a hundred and forty dollars' worth." SUTTON responded that UC-2 should come to SUTTON's location. UC-2 then traveled to an apartment in the vicinity of Stratford Avenue and 172nd Street in the Bronx, New York. SUTTON answered the door, and UC-2 entered the apartment. SUTTON placed a call to an unknown individual asking for RIVERA's phone number; once SUTTON received the phone number, he attempted to call it, but RIVERA did not pick up the phone. SUTTON then called COLEY, and thereafter stated to UC-2 that SUTTON had "ordered it up" and that "Bah" should be there soon. A short time later, COLEY came to the apartment and asked UC-2 how much UC-2 needed. UC-2 stated that UC-2 had $140 to spend, and COLEY then reached into his waistband and pulled out a bag containing numerous ziplock bags of a rocky substance. COLEY counted out sixteen bags and handed them to UC-2, at which point UC-2 handed COLEY approximately $140. COLEY and SUTTON began to divide the money, at which point UC-2 left the apartment. The substance in the ziplock bags later tested positive for the presence of cocaine base, and weighed approximately 1.5 grams.

        vii.    On or about June 20, 2016, UC-2 was walking in the vicinity of Morrison Avenue and Westchester Avenue in the Bronx, New York. UC-2 observed ROBERTS sitting in front of a building, and asked ROBERTS "Who is on deck?" to which ROBERTS responded that he would "call his man." ROBERTS instructed UC-2 to walk down the block. UC-2 did so, and when UC-2 returned to ROBERTS, ROBERTS responded "he should be coming." UC-2 asked whether ROBERTS had called "Bah," and ROBERTS answered in the affirmative. Shortly thereafter, COLEY arrived; he and UC-2 then entered into an apartment in the vicinity of 172nd Street and Morrison Avenue in the Bronx, New York. UC-2 asked COLEY to hook UC-2 up; COLEY reached into his waistband and pulled out a bag containing numerous ziplock bags of a rocky substance.

COLEY then handed UC-2 fourteen ziplock bags, in exchange, UC-2 handed COLEY approximately $120. The substance in the ziplock bags later tested positive for the presence of cocaine base, and weighed approximately 1.5 grams.

    c.    Based on my involvement in this investigation and my conversations with other law enforcement agents, I have learned that on or about August 22, 2016, the Honorable Edgardo Ramos, United States District Judge, authorized law enforcement agents to intercept wire communications occurring over a phone number used by SUTTON (the "Sutton Phone"). I have reviewed draft transcripts and summaries (collectively, "linesheets") of phone calls intercepted over the Sutton Phone. Based on my review of these linesheets and conversations with other law enforcement officers, I have learned, among other things, the following:

    i.    On or about August 31, 2016, law enforcement intercepted a call between SUTTON on the Sutton Phone and a co-conspirator ("CC-1"). On the call, in substance and in part, SUTTON called CC-1 and told him that he needed "11." CC-1 asked if SUTTON was "almost done," and SUTTON replied, "not really, I'm just trying to have . . . I see a lot of people calling me . . . for the gram and shit." Based on my familiarity with the investigation, including my review of other intercepted calls, and my training and experience, I believe that in these conversations, CC-1 supplies SUTTON with narcotics for Sutton to sell, and that in this call Sutton is calling CC-1 in order to re-up his supply to sell to customers.

    ii.    On or about September 7, 2016, law enforcement intercepted a call between SUTTON on the Sutton Phone and CC-1 in which, in substance and in part, SUTTON told CC-1 that "in the night time I know my flow is going to be clicking." CC-1 asked Sutton if he had already gotten rid of what he had, and SUTTON said that he had "like five left of that." CC-1 told SUTTON, "my shit went up to 300 grams." He elaborated, "I was getting 20, 30, 40, I kept going up, bro, I never looked back; next thing you know you call a brick all to your name, bro." CC-1 and SUTTON then discussed the price of a "quarter brick." Based on my familiarity with the investigation, including my review of other intercepted calls, and my training and experience, I believe that in this call, CC-1 was asking SUTTON about the status of SUTTON's narcotics dealing (to which SUTTON responded that he had five left of what CC-1 had provided, and expected to have more customers at night), and CC-1 was telling SUTTON about his own success in

6

selling narcotics ("next thing you know you call a brick all to your name").

       iii.    On or about September 6, 2016, law enforcement intercepted a call between SUTTON on the Sutton Phone and another a co-conspirator ("CC-2"). In this call, in substance and in part, CC-2 told SUTTON that he "wanted to put an order in with you, man, but it's so hot over here, I had the fucking Feds coming to the store . . . I'm going to be here all day, bro. Like is only me and my boy because the other dude stole all the money the other night and fucking booked it on us." Based on my familiarity with the investigation, including my review of other intercepted calls, and my training and experience, I believe that in this call, CC-2 was telling SUTTON that he wanted to order narcotics from SUTTON for resale, but was waiting because there were law enforcement agents in the area. CC-2 also indicates that he had drug trafficking proceeds stolen from him recently.

       d.    Based on my personal observations, conversations with law enforcement officers, including undercover officers, conversations with CI-1, and my review of NYPD Controlled Substance Laboratory Reports for the bags and twists of suspected cocaine base that were purchased from COLEY, LUCHONE, RIVERA, ROBERTS, RUTHERFORD, SUTTON and WYNN, and other co-conspirators known and unknown, I have learned the following:

       i.    From at least in or about July 2015 through in or about September 2016, more than 70 controlled purchases of cocaine base were made by CI-1 and NYPD officers acting in an undercover capacity from COLEY, LUCHONE, RIVERA, ROBERTS, RUTHERFORD, SUTTON, and WYNN, and other co-conspirators known and unknown. These purchases totaled approximately 75 grams of cocaine base.

       ii.    From at least in or about July 2015 through in or about September 2016, COLEY, LUCHONE, RIVERA, ROBERTS, RUTHERFORD, SUTTON, and WYNN, and other co-conspirators known and unknown were routinely available to supply cocaine base to the undercover officers and CI-1 upon demand.

       iii.    From at least in or about July 2015 through in or about September 2016, the undercover officers and CI-1 frequently observed other individuals purchasing cocaine base from COLEY, LUCHONE, RIVERA, ROBERTS, RUTHERFORD, SUTTON, and WYNN, and other co-conspirators known and unknown during the investigation into the defendants' drug trafficking activity.

    iv. Based on my training and experience and my involvement in this investigation, there is probable cause to believe that COLEY, LUCHONE, RIVERA, ROBERTS, RUTHERFORD, SUTTON, and WYNN, and other co-conspirators known and unknown, conspired to distribute and possess with the intent to distribute 280 grams and more of mixtures and substances containing a detectable amount of cocaine base.

 WHEREFORE, I respectfully request that TASHEEM COLEY, a/k/a "Bah," ELZEY LUCHONE, a/k/a "Money," JASON RIVERA, a/k/a "Harding," a/k/a "J," ALUKO ROBERTS, a/k/a "Luke," MARVIN RUTHERFORD, a/k/a "Trap," JAQWAN SUTTON, a/k/a "Q," and JAVON WYNN, a/k/a "Sunny," a/k/a "Dub," the defendants, be arrested and imprisoned or bailed, as the case may be.

_____
DETECTIVE MOISES MARTINEZ
NEW YORK CITY POLICE DEPARTMENT

Sworn to before me this
9th day of November, 2016

_____
THE HONORABLE SARAH J. NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

8